Scott, J.
It is conceded in this case, that the Warren county canal company, by virtue of its charter, only acquired an easement in the lands appropriated for the location and construction of its canal. The second and third sections of its charter authorized the company to construct and forever maintain a canal along the line therein designated, and to “ enter upon, talze, and use ” such lands as might be necessary for that purpose. This right to occupy and use lands for the purposes of a canal, it is clear, would not carry with it the fee of the lands appropriated for the purpose. But the legislature of the state, by an act passed February 29, 1836 (34 vol. O. L. Laws, 145), authorized the purchase of the Warren county canal, and satisfactory arrangements having been made with said company, the state became the owner of the canal, placed -it under the charge of the board of public works, and declared it to be “ an appendage to and part and parcel of the Miami canal,” and by the same act declared that the laws in force, in relation to the location, construction, regulation and protection of the canals of the state, should be thereby extended to the Warren county canal. (0. L. L. vol. 34, page 145.) And, inasmuch as the law, under which the Miami canal was constructed, after providing for the assessment and payment of damages to the owner of lands appropriated to the construction of canals, upon claim made by him within one year from the time of appropriation, declares that “ the fee pimple of the premises so appropriated shall be vested in this state,” (Chase’s Stat. 1472), it is claimed by the plaintiff in this case, that the effect of this legislation was to vest in the state the fee simple of all the lands in which the canal company had, by previous appropriation, acquired an easement only; and that the defendant, *633 Mulford, has, therefore, no interest in the lands which the plaintiff seeks to subject to the satisfaction of his mortgage debt.
The general law under which lands were appropriated for the construction of the Miami canal, in providing for compensation to the owners, required benefits to be set off against damages, and directed the appraisers “ to make a just and equitable estimate and appraisal of the loss or damage, if any, over and above the benefit and advantage to the respective owners or proprietors,” etc. 2 Chase Stat. 1475, The answer of the defendant, Mulford, avers that no com* pensation was ever paid him for the lands in controversy. It does not appear that he ever submitted a claim for compensation ; but had he done so, it is probable that the benefits expected to accrue to him from such a public work passing through his land and kept in perpetual operation, would have been adjudged a fair equivalent for the lands taken. Such was, perhaps, his own judgment, and he, therefore, made no •claim for damages.
It is but the dictate of natural justice, that rights acquired by the state in consideration of benefits continually arising from the uses contemplated by the act of appropriation, should terminate, when, by the abandonment of that use, the consideration no longer exists.
The state constitution of 1802 guarantied the inviolability cf private property, at the same time declaring it to be subservient to the public welfare, provided compensation, in' money, be made to the owner.
The power of the legislature, under this constitution, to take from the owner, the absolute fee simple of his land, without any other compensation than the benefits to result from the uses for which the land is taken, and then to abandon those uses, and sell the lands, to be held and used by the purchaser as private property, is, to say the least, very questionable. It seems, in effect, to be the taking of private property for private use, without, any compensation whatever.
But waiving this question, as not necessarily involved in *634 tbe decision of the present case, can the effect claimed fox the act of February 29, 1836, by which the canal in question was annexed to the Miami canal, be fairly given to it ? The lands in question had been appropriated several years before that time, by the Warren county canal company. The line of the canal had been located in full, and the work had progressed far toward completion. In pursuance of an arrangement made with the company, the state, by this act of the legislature, became bound to pay to the company fifty per cent-of the moneys which had-been expended in the partial construction of the canal, and it was ordered to be completed by the board of canal commissioners, under whose supervision it was, for that purpose, placed, as one of the public works of the state, and declared to be an appendage to the Miami canal, and as such, under the operation of the laws in relation to the location, construction, pi'otection and regulation of the canals of the state. This was the substance of the whole act. It expressed no intention to affect the character of the appropriations which had been previously made by the company, whose rights were to be transferred to the state. It was wholly prospective in its character. It contained no provision for a reappraisement of damages, and gave no notice to the owners of the lands appropriated, of an intention to enlarge the interest purchased from the canal company. Had it been intended to make a further exercise of the right of eminent domain, the act of appropriation should certainly have been so open and unmistakable, as to give clear notice to the owners, and enable them to prefer their claims for compensation. But for the purposes of a canal no farther appropriation could have been necessary, and it can not be presumed to have been intended, unless clearly expressed. It must, therefore, be held that the subsequent abandonment of the whole canal, determined the easement held by the state in the1 premises in controversy, and that the right to their possession reverted to the owner of the freehold.
But it does not follow from this, that when, by the abandonment of the canal, the right to the full possession of the lands in controversy reverted to the defendant, Mulford, he *635 also acquired a right to all the locks and the materials uséd in constructing the canal over and through the premises. These structures and materials were part and parcel of the canal, they were the absolute property of the state, and were rightfully placed where they are. They are not in the nature of annexations to the freehold, made by a tenant without permission of the landlord. The purposes of justice require that the title to the canal, as such, with its appurtenances,' should he regarded as distinct from that of the freehold. At the same time, we think the defendant is entitled to the possession of his lands with as little injury to their value as is consistent with the circumstances of the casé, and the assignees of the state have no equitable right, by the removal of the stone and other material of the locks, to increase the excavations to the defendant’s prejudice.
The demurrer to the answer will he overruled, and the cause remanded to the district court for such decree, in accordance with the principles we have intimated, as may, upon the hearing, be found equitable.
Sutliee, C.J., and Peck, Gholson and Brinkerhoee, J J., concurred.